IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 24-CR-00051-SEH |
| MARCO DIONTE ATKINS, SIDNEY BROOK MAYFIELD, | |
| Defendants. | |

# OPINION AND ORDER

Before the Court is a joint objection to the government's Notice [ECF No. 82], filed by Defendants Marco Dionte Atkins and Sidney Brook Mayfield. [ECF No. 86]. For the reasons provided below, the motion is denied in part and granted in part.

## I. Background/Procedural History

Following a shooting in Tulsa, an arrest warrant issued for Atkins, and he was ordered detained on February 8, 2024. [ECF No. 17]. While in jail, Atkins talked to his mother, Mayfield, over a recorded jail call. [ECF No. 87 at 2]. During the conversation, Mayfield referred to the victim of the shooting as a

"Hoover," told Atkins his "street name," and stated that he was "in five four."[1] Atkins confirmed he already knew that information and said, "I was just asking a couple of these two homies … his homies want to talk to that n****. Make sure he don't do no bullshit. He don't go to court."

On February 20, 2024, a federal grand jury charged Atkins with assault with a dangerous weapon with intent to do bodily harm in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 113(a)(3) (count one), and carrying, using, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (count two). [ECF No. 19].

On May 4, 2024, while he remained in jail, Atkins told Mayfield to "be careful momma, you know today '54' day." About two weeks later, Mayfield told Atkins that she planned to sneak a camera into the courtroom to "show all them n****s out here" who is testifying to the grand jury against him. She stated that she planned to be a "watchdog" in the courtroom to see who would testify against him, naming specific witnesses she referred to as "the Hoover n****s."

---

[1] The government provided the Court with copies of the jail calls and social media referenced in this order. Facts related to statements either Defendant made through these calls or social media are taken from the copies provided to the Court.

Separately, Atkins told another witness to the shooting, through a recorded prisoner-to-prisoner three-way call, that if he got out of jail first, he would "put all types of money on your books," if the witness would "do that for me, talk to that man." In another recorded jail call on June 4, 2024, Mayfield and Atkins said "Happy 64 day" to each other. Then, Mayfield handed the phone to an unidentified man who told Atkins he would "be on his ass though and everything," referring to the victim of the shooting. Atkins replied, "Alright, I appreciate this shit for real."

The government's key witness evaded and/or failed to appear at a jury trial scheduled to begin June 17, 2024. Upon the government's request, a bench warrant issued for the witness and the government moved to continue the trial. [ECF No. 87 at 4]. After the Court granted the government's motion to continue, Mayfield recorded a Facebook Live video, in which she called the key witness a "snitch" and a "rat," and identified him by his full legal name. She also stated, "you supposed to roll with SND for life cuz Marco had your back." Mayfield directed a statement to the key witness's mother, saying, "Your son scared to go to jail cuz he scared of all them 48 n****s and them Hoover n****s that's in that motherfucker." She further said, "I will kill anybody that go against me with Marco."

On July 1, 2024, a federal grand jury charged both Mayfield and Atkins with various crimes through a superseding indictment. [ECF No. 65]. The

3

superseding indictment added crimes to those originally charged in the indictment, including: conspiracy to tamper with a witness, victim, and informant, in violation of 18 U.S.C. § 1512(k) (count three), tampering with a witness, victim, and informant, in violation of 18 U.S.C. §§ 1512(b)(1) and 1512(b)(2) (counts four and five), retaliating against a witness, victim, and informant, in violation of 18 U.S.C. § 1513(b)(2) (count six), corruptly obstructing due administration of justice, in violation of 18 U.S.C. §§ 1503(a) and 1503(b)(3) (count seven), and false declarations before a grand jury, in violation of  18 U.S.C. 1623(a) (count eight). [*Id*.].

On July 22, 2024, the government gave notice that it intends to introduce the expert testimony of Tulsa Police Department Officer Brent Barnhart. [ECF No. 82]. According to the government's notice, Barnhart is currently assigned to the Department's Special Investigation Division – Strategic Intervention Unit (SIU) and "investigates gang related violent crime, non-fatal shootings, street level narcotic conspiracies, and illegal firearm possession, among other things." [*Id*. at 1].

The notice provides that Barnhart will testify, based on his training and experience, "about the coded language used by gang members, the general culture of avoiding cooperation with law enforcement and suppressing cooperation by others, the means employed by those in and out of prison to accomplish these ends, and other factors relevant to gang culture in and out

4

of prison." [*Id.* at 2]. The notice further states that "[h]e will testify about indicators of gang membership, gang culture, and the difference between different gangs and their sets, particularly with respect to those in Oklahoma." [*Id.*]. Attached to the notice is Barnhart's curriculum vitae, listing his education, training, and experience in gang-related matters. [ECF No. 82-1].

Defendants raise three challenges to Barnhart's testimony. First, they argue that he does not possess the requisite knowledge or training to testify as an expert under Federal Rule of Evidence 702. [ECF No. 86 at 4]. Second, Defendants claim that Barnhart's testimony is not factually relevant because they are not gang members. [*Id.* at 5]. Third, they argue that Barnhart's testimony about the general tendencies of gang members would unfairly prejudice them. [*Id.*]. They further assert that permitting Barnhart to "speculate as to the intent of the Defendants and whether it amounts to some form of witness tampering" would violate Fed. R. Evid. 704. [*Id.* at 5].

In response, the government argues that Barnhart is qualified to testify as an expert by his knowledge, skill, experience, training, and education, and that his testimony is relevant and reliable. [ECF No. 87 at 6–8]. The government further states that it "will not elicit, and Officer Barnhart will not provide, any testimony in violation of Rule 704." [*Id.* at 9]. Attached to the government's response is Barnhart's curriculum vitae and a form the

5

Tulsa Multi Agency Gang Operational Team uses to identify an individual as a suspected gang member. [ECF Nos. 87-1, 87–2].

The Court held a hearing on Defendant's motion on August 19, 2022. Before calling Barnhart to testify, the government explained its intent was to limit evidence of gang affiliation and gang membership to the charges concerning conspiracy, witness tampering, and obstruction. According to the government, the alleged shooting was not motivated by any gang affiliation.

Barnhart testified about his education, training, and experience related to gangs within the Tulsa area. He specifically discussed two larger gangs operating within Tulsa, explaining that each gang contains "sets" within them that are designated by certain numerical values. Barnhart testified that gang members use specific acronyms to identify themselves, wear specific colors, and use certain hand signs or gestures as components of their gang culture. He further explained the process used by the Tulsa Multi Agency Gang Operational Team ("the Multi Agency Team") for certifying individuals as active gang members. He testified that a major component of gang culture is not to be labeled a "snitch" or cooperate with law enforcement, and that if a gang member cooperates, they or their family members commonly suffer violent consequences. He explained that gang members typically do not call each other "snitches" without first verifying cooperation through

documentation or public record, and that a big part of gang culture is to manipulate court proceedings to prevent witnesses from testifying.

He further testified that family connections within gangs or their sets is common and confirmed that both Defendants have been certified as gang members through the Multi Agency Team. Specifically, Barnhart testified that he reviewed Atkins's social media posts, criminal history, and relevant law enforcement reports and, based on his extensive review, the Multi Agency Team voted and certified Atkins as an "SND Blood." Barnhart further testified that Mayfield was certified as a "Blood" in 2017.

Barnhart also testified about his review of the jail calls and social media evidence in this case. He testified that he found evidence consistent with Atkins and Mayfield being members of the same gang, and identified certain acronyms and terminology used in jail calls by both Atkins and Mayfield. He further explained that nicknames or street names are common in gang culture and identified specific individuals Atkins and Mayfield referenced in the calls. Barnhart also testified about a friendship between Atkins and a member of a rival gang evidenced in the jail calls. He further discussed his experience listening to jail calls of gang members in the past and testified about the methods inmates and others use to obscure communications from law enforcement. Barnhart described common methods as including coded

7

language and vague statements, deleted calls and messages, and three-way calls used to avoid identifying who an inmate is talking to outside of jail.

Barnhart also testified about specific slang and lingo commonly used by gang members, such as "putting a jacket on," "putting somebody on," and "on the set," and explained that those specific terms were contained in the evidence he reviewed for this case. He explained that methods he uses to keep up with evolving terminology and lingo includes weekly data review from social media, cell phones, and interviews, and having informants provide updates on current lingo and terminology used by active gang members.

## II. Applicable Standard

Admissibility of expert witness testimony is evaluated under Fed. R. Evid. 702, which permits a qualified expert to testify and render an opinion when the witness "is qualified as an expert by knowledge, skill, experience, training, or education" and "it is more likely than not that:"

- (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

- (b) The testimony is based on sufficient facts or data;

- (c) The testimony is the product of reliable principles of methods; and

- (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Pursuant to Rule 702, the Court must perform a "gatekeeping role ... of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The objective of this "gatekeeping requirement ... is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat's Life Assur. Corp.*, 11-CV-475-GKF, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert*, 509 U.S. at 589; *Kumho Tire Co. v. Carmichael*, 526 U.S. at 149).

In exercising its gatekeeper duties, a district court must undertake a two-step analysis. *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). "First, the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *Id*. (cleaned up). "If so qualified, the Court must then determine

9

whether the expert's opinion is reliable under the principles set forth in *Daubert* and *Kumho Tire* and relevant, in that it will assist the trier of fact." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1278 (W.D. Okla. 2008). The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

"[A] judge assessing a proffer of expert … testimony under Rule 702 should also be mindful of other applicable rules," including Fed. R. Evid. 403. *Daubert*, 509 U.S. at 595. Rule 403 permits the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice…." Fed. R. Evid. 403. The Tenth Circuit has described evidence as being unfairly prejudicial when "it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999).

### III. Analysis

#### A. Barnhart is qualified to testify as an expert witness.

Barnhart is qualified by knowledge, skill, experience, training, or education to render an opinion. *Lippe*, 287 F. Supp. 3d at 1277–78. Rule 702 "applies to experts beyond the field of science." *United States v. Kamahele*,

748 F.3d 984, 998 (10th Cir. 2014). And the Tenth Circuit has "long recognized that police officers can testify as experts based on their experience '[b]ecause the average juror is often innocent of the ways of the criminal underworld.'" *Id*. (quoting *United States v. Garcia*, 635 F.3d 472, 477 (10th Cir.2011) (citations omitted)).

In its expert notice, the government states that Barnhart will "testify about the coded language used by gang members, the general culture of avoiding cooperation with law enforcement and suppressing cooperation by others, the means employed by those in and out of prison to accomplish these ends, and other factors relevant to gang culture in and out of prison." [ECF No 82 at 2]. The notice provides that Barnhart will further testify "about indicators of gang membership, gang culture, and the difference between different gangs and their sets, particularly with respect to those in Oklahoma." [*Id*.].

Barnhart has been an investigator with the Tulsa Police Department's Special Investigation Division – Strategic Intervention Unit since 2016. [ECF No. 82 at 1]. In this role, he investigates gang-related violent crime, non-fatal shootings, street level narcotic conspiracies, illegal firearm possession, and other criminal activity. [*Id*.]. He has participated in numerous gang-related investigations and arrests and has received informal training on the recognition of gang symbols, identifiers, lingo, and culture from more senior

11

investigators, as well as from identified gang members. [*Id*. at 2]. Barnhart graduated from the University of Oklahoma in 2005, receiving a Bachelor of Science in criminology. [ECF No. 82-1 at 1]. He graduated from the Tulsa Police Academy in 2007 and has since been employed by the Tulsa Police Department as an officer and investigator. [*Id*.].

In 2009, Barnhart completed the Tulsa Police Department's Basic Investigator Class. [ECF No. 82-1 at 1]. In 2018, he obtained a National Gang Crime Research Center Basic Gang Specialist Certification. [*Id*.]. Barnhart has attended multiple courses and has taught courses related to gang investigations. [*Id*. at 1–2]. This is sufficient for the Court to conclude that Barnhart is qualified by knowledge, skill, experience, training, and education to testify as a gang expert.

### B. Barnhart's proposed expert testimony is reliable and relevant, and it will help the jury understand the evidence.

The Court must next determine whether Barnhart's opinion is "reliable under the principles set forth in *Daubert* and *Kumho Tire* and relevant, in that it will assist the trier of fact." *Lippe*, 287 F. Supp. 3d at 1278. In assessing whether an expert's testimony is reliable, courts must "assess the reasoning and methodology underlying the expert's opinion." *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (citations and internal quotation marks omitted). If the reliability prong is met, the court considers

12

"whether the testimony is relevant," "within the juror's common knowledge and experience," and "whether it will usurp the juror's role of evaluating a witness's credibility." *Id*. (citations omitted). Essentially, the question is "whether [the] reasoning or methodology properly can be applied to the facts in issue." *Id*. (quoting *Daubert*, 509 U.S. at 593).

 1. *Barnhart's expert opinion is sufficiently reliable.*

Here, Barnhart's expert opinion is sufficiently reliable because it is based on years of experience as a law enforcement officer and numerous sources involving gang-related data. At the hearing, he testified about his extensive review of social media, criminal history, and relevant law enforcement reports to determine whether an individual is a candidate for gang certification and the regulated process the Multi Agency Team uses to certify someone as a gang member. He further discussed methods he follows for staying current with evolving gang terminology and lingo and testified about his years of experience with gang-related investigations within the City of Tulsa. Additionally, he discussed his years of training and teaching in gang-related matters. Therefore, the Court finds that Barnhart's expert testimony is sufficiently reliable because his conclusions are based on his "expertise, derived over many years and from multiple sources." *See Kamahele*, 748 F.3d at 999.

### *2. Barnhart's testimony is relevant and will help the jury.*

Barnhart's testimony is relevant. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, both defendants are certified members of a gang operating within the City of Tulsa. Barnhart provided testimony about various sets contained within that gang, as well as a rival gang operating within the city. The evidence in this case involves Defendants referencing various individuals by their gang affiliation and nickname or street name and discussing court proceedings and witnesses related to the charged offenses. The evidence shows Defendants using terms like "48," "54," "64," "SND," "watchdog," and "Hoover." Barnhart's testimony explaining these terms is directly relevant to the identity of the witnesses and alleged victims, as well as the purported motive for the witness tampering charges. Further, Barnhart testified that the terms "snitch" and "rat" carry significant meaning within gang culture. Therefore, Barnhart's testimony about gang affiliation, terminology, and culture is relevant.

Moreover, the Tenth Circuit has found gang-affiliation testimony relevant when a conspiracy is charged. *See, e.g.*, *United States v. Brown*, 200 F.3d 700, 708 (10th Cir.1999) (finding gang-affiliation evidence relevant to issues of identity and conspiracy); *United States v. Sloan*, 65 F.3d 149, 151 (10th

14

Cir.1995) (permitting use of "gang activity" evidence "to prove the existence of a conspiracy and to show the basis of the relationship between the defendant and witnesses …."); *United States v. Robinson*, 978 F.2d 1554, 1563 (10th Cir.1992) (finding evidence of "[g]ang membership helped to establish an agreement among the subjects, the purpose of the conspiracy and knowledge on the part of these defendants."); *United States v. Silverstein*, 737 F.2d 864, 866 (10th Cir.1984) (affirming trial court's admission of gang-affiliation testimony when defendant was affiliated with Aryan Brotherhood).

The charged conspiracy in this case requires the government to prove an agreement to commit witness tampering, knowledge of the essential objectives, knowing and voluntary involvement in the conspiracy, and interdependence. *See United States v. Sutton*, 30 F.4th 981, 983–84 (10th Cir. 2022) (listing elements of conspiracy to commit witness tampering involving 18 U.S.C. § 1512(b)(1)). Evidence associating Defendants with a specific gang and affirming others' actions to receive a mutual benefit is directly relevant on the issues of agreement, interdependence, and purpose of the conspiracy. For example, in the Facebook Live video, Mayfield directed statements to the government's key witness. This witness is himself affiliated with the SND Blood set and Mayfield identifies him as a "snitch" and condemns his cooperation with the government, saying the witness was "supposed to roll with SND for life." Without understanding some of the social relationships

15

between members of a set, the jury will not be able to evaluate the meaning Mayfield's remarks. Therefore, the Court finds Barnhart's testimony is relevant.

Barnhart's testimony will also help the jury understand the evidence. The Tenth Circuit has long recognized the usefulness of gang expert testimony "because the average juror is often innocent of the ways of the criminal underworld." *United States v. Garcia*, 793 F.3d 1194, 1212–13 (10th Cir. 2015) (quoting *United States v. Vann*, 776 F.3d 746, 758 (10th Cir.2015)). "Expert testimony about a gang's history, territory, colors, hand signs, graffiti use, naming practice, tattoos, structure, membership rules, and similar sociological evidence can assist the jury in understanding and evaluating evidence concerning the specific crimes charged." *Id.* at 1213 (citing *Archuleta*, 737 F.3d 1287, 1294–95 (10th Cir.2013); *Robinson*, 978 F.2d at 1561–63; *United States v. Hartsfield*, 976 F.2d 1349, 1352 (10th Cir.1992); *United States v. Mejia*, 545 F.3d 179, 187 (2d Cir.2008)). However, "there is no sociological expertise in testifying to gang members' specific travels, specific uses of gang funds, or commission of specific crimes." *Id.* (citing *Mejia*, 545 F.3d at 194–95).

Here, Barnhart's testimony will be helpful for the jury because a typical juror will lack knowledge of the gang-related acronyms and terminology contained within the evidence. "The average juror would fail to recognize the

16

'significance of this evidence without the particular background knowledge' of gangs and the philosophy of gang membership." *Robinson*, 978 F.2d at 1564–65 (quoting *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991), *cert. denied*, 520 U.S. 897 (1991)). "Without [the expert testimony], the basic evidence would leave a juror puzzled." *Id.* at 1565 (alteration in original). Therefore, Barnhart's testimony explaining specific acronyms and terminology will aid the jury in understanding and weighing the evidence. For example, Barnhart testified about specific slang and lingo commonly used by gang members, such as "putting a jacket on," "putting somebody on," and "on the set," and explained that those specific terms were contained in the evidence he reviewed for this case. In jail calls and on social media, Defendants referenced certain individuals by nicknames or street names and Barnhart was able to identify those individuals and their relationship to one another and to the defendants. Thus, his testimony will further provide context and will help the jury identify the relationships between the defendants, witnesses, and named victims in this case.

Moreover, the Tenth Circuit has upheld officer-expert testimony about participation in gang activity as being helpful to the jury. *Kamahele*, 748 F.3d at 998; *see also Archuleta*, 737 F.3d at 1297 ("[W]e have affirmed district courts' admission of gang-expert testimony as helpful to a jury when a defendant is a gang member."); *Hartsfield*, 976 F.2d at 1352 (upholding the

17

government's use of an officer-expert's testimony about the Black Mafia Crip Dawgs's objective of distributing cocaine and crack cocaine). Therefore, the Court finds Barnhart's expert testimony will help the jury in understanding the evidence and in determining issues of fact.

### C. As limited, Barnhart's testimony will not unfairly prejudice Defendants.

Barnhart's testimony will not unfairly prejudice Defendants, provided he does not opine that gang culture includes violent consequences and preventing witnesses from testifying. "Virtually all relevant evidence is prejudicial to one side or the other." *Archuleta*, 737 F.3d at 1293. However, for Rule 403 to bar evidence, the prejudice must be unfair. *Id.* "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Isabella*, 918 F.3d 816, 837 (10th Cir. 2019) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). Thus, evidence is unfairly prejudicial when "it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Irving*, 665 F.3d 1184, 1213–14 (10th Cir. 2011) (quotation marks and alteration omitted). But even where unfair prejudice is found, "it must

substantially outweigh the probative value of the evidence in order to be excluded under Rule 403." *Id.* at 1214 (emphasis omitted).

Defendants argue that Barnhart's testimony about the general tendencies of gang members would be unfairly prejudicial because it would cause the jury to improperly return a verdict based on emotion or "guilt by association." [ECF No. 86 at 5]. "Any unfairness from gang-affiliation testimony stems from the implicit connection the expert draws between the crimes committed by gangs and the defendant gang member." *Archuleta*, 737 F.3d at 1295. Therefore, the Court agrees with Defendants that Barnhart's testimony could unfairly prejudice them if he testifies that violent consequences and manipulation of court proceedings to prevent witnesses from testifying are part of the general culture of gangs. "[T]he jury should not assume that the defendant gang member[s] committed the crimes detailed by the expert." *Id.*

As discussed above, the Court finds Barnhart's testimony is relevant, reliable, and will help the jury understand and weigh the evidence. Therefore, as limited, the risk of unfair prejudice does not substantially outweigh the probative value of his testimony.

### IV. Conclusion

For the reasons set out above, the Court finds the government has carried its burden to prove that Barnhart is qualified to testify as an expert and that his opinions are based in sound methodology and sufficient facts. His

testimony will help the jury understand the evidence related to the conspiracy, witness tampering, and obstruction charges because that evidence contains acronyms and terminology inherent to specific gangs Defendants referenced in jail calls and on social media and to which they are both certified members. However, because the Court finds that testimony purporting gang members to be generally violent or that they have committed specific crimes is unfairly prejudicial, Barnhart is prohibited from testifying that gang culture includes violent consequences and preventing witnesses from testifying.

Because the government does not intend to elicit any testimony about the defendants' mental state or intent, the Court finds Defendants' objection relating to Rule 704 is moot.

IT IS THEREFORE ORDERED that the joint objection to the government's Notice [ECF No. 82] is DENIED in part and GRANTED in part.

DATED this 30th day of August, 2024.

*Sara Hill*

Sara E. Hill
UNITED STATES DISTRICT JUDGE